IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 6, 2002

## JERRY BURKE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P19597      John P. Colton, Jr., Judge**

-------------------

**No. W2001-01700-CCA-MR3-PC - Filed December 20, 2002**

-------------------

The petitioner, Jerry Burke, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief, claiming that he received the ineffective assistance of counsel. He contends that his trial attorney was ineffective for (1) failing to request a mental evaluation; (2) failing to investigate his case; and (3) failing to subpoena witnesses and cross-examine witnesses adequately. We affirm the trial court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Charles W. Gilchrist, Jr., Memphis, Tennessee (on appeal), and Jeffery S. Glatstein, Memphis, Tennessee (at trial), for the appellant, Jerry Burke.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and P. Thomas Hoover, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to the petitioner and his two codefendants forcing their way inside the home of Mrs. Jerry Craft, tying up her and her husband, ransacking the home, and robbing the family. The record reflects that a jury convicted the petitioner of two counts of especially aggravated kidnapping, one count of aggravated robbery, and one count of attempted aggravated robbery. The trial court sentenced him as a Range II, multiple offender to an effective sentence of twenty-seven years in the Tennessee Department of Correction, and this court upheld the convictions on appeal. See State v. Jerry Burke, No. 02C01-9510-CR-00319, Shelby County (Tenn. Crim. App. Dec. 11, 1996), app. denied (Tenn. May 12, 1997).

Relative to the petitioner's issues in this appeal, the evidentiary hearing transcript reflects the following: The petitioner testified that he told his attorney that he had a history of mental problems but that his attorney disregarded the information. He said that a doctor never interviewed him in jail and that he had no knowledge of his attorney filing a notice of intent to use a diminished capacity defense. He said that some of the witnesses at his preliminary hearing testified at his trial and that some of the witnesses' preliminary hearing testimony conflicted with their trial testimony. He said that another attorney represented him at the preliminary hearing and that he told his trial attorney about the hearing. He said that his attorney did not order a preliminary hearing transcript or audiotape and, therefore, was not prepared to cross-examination and impeach witnesses at trial. He said that his attorney also did not check the victims' criminal histories, did not have ballistics tests performed on guns that police officers found at the crime scene, and did not have the guns tested for fingerprints.

The petitioner testified that his attorney did not interview or call the arresting officer to testify at trial. He said that his attorney also did not interview officers from the police tactical unit that entered and searched Mrs. Craft's home on the night of the crimes. He said that although there was evidence that the tactical unit officers ransacked Mrs. Craft's home, his attorney did not call the officers to testify. He said the officers would have helped his case because they saw the crime scene. He said his attorney did not cross-examine the victims at trial even though the victims gave testimony that contradicted each other. He said his attorney cross-examined other state witnesses but "didn't follow all the way through with it."

On cross-examination, the petitioner testified that he talked with his attorney three or four times before trial and that his attorney asked him to explain what happened on the night of the crimes. He acknowledged having two prior convictions for armed robbery and said he decided not to testify at trial because the state could have asked him about the convictions. He said that other than the police officers who were at the crime scene, he did not give his attorney the names of any other witnesses. He acknowledged that he was charged with nine offenses and that the jury found him guilty of four crimes.

The petitioner's trial attorney testified that he had been licensed to practice law since 1972. He said that at the time of the hearing, he had been practicing criminal law for twenty-eight years and that he had tried many cases. He said he was appointed to represent the petitioner and first met with him on November 24, 1993. He said that during the meeting, he learned personal information about the petitioner, discussed the facts of the case with the petitioner, determined whether any defense witnesses existed, and considered possible defenses. He stated that the petitioner claimed that he and his codefendants went to Mrs. Craft's home in order to buy drugs and that the victims were lying about the petitioner and the codefendants robbing them. He said that he sent an investigator to interview the state's witnesses and that if a witness would not talk to the investigator, then he got a copy of the statement the witness gave to the police. He acknowledged that the state had open-file discovery and said he reviewed the state's file. He said that the state offered to let the petitioner plead guilty in return for a twenty-year sentence and that the state also offered to let the

petitioner's two codefendants plead guilty in return for fifteen-year sentences. He said the case went to trial because not all of the codefendants would accept the plea offers.

The attorney testified that the petitioner had many court appearances and that every time the petitioner went to court, he had a conference with the petitioner. He said that he did not remember if he met with the petitioner in jail but that he may have had a deputy bring the petitioner from the jail to one of the courtrooms in order for him to talk to the petitioner. He said that the petitioner did not tell him about having a mental problem and that he did not see any indication that the petitioner needed a mental evaluation. He said the jury found the petitioner not guilty of two counts of aggravated robbery, two counts of especially aggravated kidnapping, and one count of aggravated burglary. He said that the petitioner gave him the name of a witness named Tim Williams but that he and the codefendants' attorneys could not find the witness.

On cross-examination, the attorney testified that he did not contact the petitioner's family or look at the petitioner's school records in order to determine whether the petitioner needed a mental evaluation. He said that he did not know whether anyone ever made him aware that the petitioner had had a preliminary hearing and that he did not know whether he reviewed an audiotape of the hearing. He said he did not know if the petitioner asked for a new attorney before trial.

In denying the petitioner post-conviction relief, the trial court noted the attorney's testimony that he did not seek a mental evaluation for the petitioner because the petitioner did not exhibit any signs of mental illness and because the petitioner did not tell him about a history of mental illness. It determined that the petitioner did not receive the ineffective assistance of counsel for his attorney's failure to request a mental evaluation. In addition, the trial court stated that the petitioner "presented no evidence to show that Counsel failed to conduct a reasonable investigation in this case." In support of this conclusion, the trial court noted that the petitioner's attorney testified that he sent an investigator to interview the state's witnesses, that he got copies of statements witnesses gave to police, and that he participated in open-file discovery with the state. Finally, in finding that the petitioner failed to show that he received the ineffective assistance of counsel because his attorney did not subpoena witnesses and did not cross-examine witnesses adequately, the trial court noted the petitioner's testimony that he did not give his attorney the names of any potential witnesses. The trial court also noted the attorney's testimony that the petitioner gave him the name of Tim Williams but that he could not find Mr. Williams.

The petitioner claims that he received the ineffective assistance of counsel because his trial attorney failed to request a mental evaluation. In addition, he claims that his attorney failed to investigate his case properly. Specifically, he argues that his attorney should have used preliminary hearing transcripts to prepare for trial and that his attorney's failure to do so resulted in his attorney not being able to cross-examine witnesses effectively. Finally, he claims that his attorney should have called witnesses, such as police officers, to testify at trial and that his attorney did not adequately cross-examine the state's witnesses.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See Hellard, 629 S.W.2d at 9; DeCoster, 487 F.2d at 1201.

In a post-conviction case, the burden is on the petitioner to prove by clear and convincing evidence his grounds for relief. Tenn. Code Ann. § 40-30-210(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

As to the petitioner's claim that he received the ineffective assistance of counsel because his trial attorney failed to request a mental evaluation for him, the trial court obviously accredited the attorney's testimony that nothing indicated to him that the petitioner needed a mental evaluation. Moreover, although the petitioner testified that he had a history of mental illness, no mental health experts testified at the hearing. Therefore, we conclude that he has failed to demonstrate that his attorney was ineffective for failing to request a mental evaluation. As to his claim that his attorney did not properly investigate his case, we believe the petitioner again has failed to demonstrate that his attorney rendered ineffective assistance of counsel. Although the trial court did not specifically address the attorney's failure to use a preliminary hearing transcript to cross-examine witnesses at trial, the petitioner presented no proof at the hearing as to how he was prejudiced by his attorney's failure to use the transcript. In addition, the petitioner presented no evidence at the hearing as to how his attorney's cross-examination of any witness was deficient or as to how his attorney should have cross-examined a witness. Finally, although the petitioner claims that his attorney rendered

ineffective assistance of counsel for failing to call police officers to testify, he did not present the testimony of these witnesses at the hearing. Therefore, without any proof as to the testimony that these witnesses would have offered, the petitioner cannot demonstrate that he was prejudiced by their failure to be interviewed or called on his behalf. See Black v. State, 794 S.W.2d 753, 757 (Tenn. Crim. App. 1990). We conclude that the petitioner has failed to show that he received the ineffective assistance of counsel.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE